UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHAN SEBASTIAN OLAVE RONDON,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, NORTHWEST ICE PROCESSING CENTER,<br><br>Respondent. | CASE NO. 2:26-cv-03945-LK<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Johan Sebastian Olave Rondon's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons stated below, the Court grants the petition.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Columbia. Dkt. No. 6 at 1. On or about November 30, 2023, U.S. Border Patrol encountered him near Tacate, California, after he arrived in the country without being admitted or paroled. *Id.* Border Patrol detained him and transported him to the "San Diego Area Detention/Transit Staging Area" for processing. *Id.* On December 3, 2023, Petitioner was served a Notice to Appear, charging him as inadmissible pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as "an alien present in the United States who has

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009).

not been admitted or paroled." Dkt. No. 7-2 at 2. The same day, Border Patrol released him on an Order of Release on Recognizance ("OREC"), which required him to check in with U.S. Immigration and Customs Enforcement ("ICE") periodically. Dkt. No. 6 at 2; *see* Dkt. No. 7-3. Petitioner checked in with ICE in Seattle several times but apparently failed to report as scheduled on September 24, 2025. Dkt. No. 6 at 2. Petitioner claims that he was "never served with written notice, citation, or summons" for the appointment that he purportedly missed. Dkt. No. 1 at 4.

More than a year after the purported violation, on October 2, 2026, ICE officers arrested Petitioner during a "targeted enforcement operation" in Federal Way, Washington. Dkt. No. 6 at 2. That same day, at a point in time unspecified in the record, ICE "cancelled Petitioner's [OREC.]" *Id.* Later that day, ICE transferred Petitioner to the Northwest ICE Processing Center ("NWIPC"), in Tacoma, Washington, where he remains detained. *Id.* at 2–3. Petitioner is scheduled for a master calendar hearing at the Tacoma Immigration Court on November 6, 2026. *Id.* at 2. Petitioner has not been given a bond hearing.

On October 15, 2026, Petitioner filed a pro se petition for a writ of habeas corpus. Dkt. No. 1. On October 29, 2026, Respondents[2] filed a return, Dkt. No. 5. On November 3, 2026, Petitioner filed a traverse. Dkt. No. 8.

## II. DISCUSSION

Petitioner contends that ICE violated his due process rights by re-detaining him without prior notice of revocation of his OREC, and violated his Fourth Amendment protection against unreasonable seizures by detaining him "through disproportionate force without probable cause[.]"

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

Dkt. No. 1 at 2. He claims that his detention "lacks legal authority" under Section 236 of the INA and associated regulations. *Id.* He requests immediate release under his prior conditions of supervision or, alternatively, a prompt bond hearing at which the Government bears the burden of proving by clear and convincing evidence that his continued civil detention is necessary. *Id.*

Respondents contend that Petitioner is mandatorily detained under 8 U.S.C. § 1225(b). Dkt. No. 5 at 3–5. They argue that his re-detention comported with due process requirements. *Id.* at 5–7. They further assert that if the Court finds that Petitioner's detention is governed by Section 1226(a), rather than 1225(b), the appropriate relief would be to provide Petitioner with a bond hearing before an immigration judge. *Id.* at 4–5.

**A. Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Petitioner Has Established a Due Process Violation**

As mentioned above, Respondents assert that Petitioner is detained under 8 U.S.C. § 1225(b). Dkt. No. 5 at 3–5. Petitioner contends he was apprehended and released pursuant to 8 U.S.C. § 1226. Dkt. No. 1 at 2; Dkt. No. 8 at 2. The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Rodriguez Diaz v. Garland,* 53 F.4th 1189, 1196 (9th Cir. 2022); *see also id.* at 1203 (explaining that because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

1. <u>Process Required by the Statute</u>

a. *8 U.S.C. § 1226(a) is the Applicable Statutory Authority*

8 U.S.C. § 1225 applies to "applicants for admission" to the United States. An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who

arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)). "That express exception to detention implies that there are no *other* circumstances under which aliens detained under §1225(b) may be released." *Id.* at 300.

As the Ninth Circuit recently held, "[noncitizens] present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026); *see also Guerrero Orellana v. Moniz*, 188 F.4th 1 (1st Cir. 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Buele Morocho v. Warden Philadelphia FDC*, 189 F.4th 287 (3d Cir. 2026); *Lopez Garcia v. Guadian*, 190 F.4th 305 (4th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909 (7th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026). "The implication of the government's position is that Congress in 1996 made a major change to the immigration laws by subjecting millions of unadmitted [noncitizens] present in the United States to mandatory detention, but that this change then went unnoticed and unheeded, with the Executive Branch for the next three decades violating Congress's assertedly unambiguous mandatory detention directive by treating these [noncitizens] as subject to release on bond." *Rodriguez Vazquez*, 183 F.4th at 1164. But "the text, context, and structure of the INA, considered as a whole, did not direct such a significant, yet overlooked, change in the law." *Id.* Moreover, under Respondents' interpretation, "Congress's recent handiwork in the Laken Riley Act," which carved out an additional category of noncitizens from section 1226(a)'s discretionary detention scheme who now fall under section 1226(c)'s mandatory detention authority, "would be rendered superfluous, because those aliens subject to

§ 1226(c)(1)(E) would already be subject to mandatory detention under § 1225(b)(2)(A), as inadmissible aliens present in the United States." *Id.* at 1185.

Consistent with the Ninth Circuit's interpretation of the governing statutory scheme, the government has treated Petitioner as subject to discretionary detention under 8 U.S.C. § 1226 from his arrival in the United States until his arrest. *See* Dkt. No. 7-3 at 2 (OREC stating "you are being released" in "accordance with section 236 of the INA," *i.e.*, 8 U.S.C. § 1226); Dkt. No. 7-4 at 2 (Notice of Custody Determination citing section 236); *see also* Office of Homeland Security Statistics, *Glossary: Release on Recognizance*, https://ohss.dhs.gov/glossary (last visited November 3, 2026) (defining "Release on Recognizance" to mean "release from ICE detention subject to reasonable conditions of [a noncitizen] in removal proceedings after having been issued a Notice to Appear (NTA) or [a noncitizen] with an appeal pending with the Board of Immigration Appeals (BIA)" "[p]ursuant to section 236(a) of the INA"). Indeed, the NTA issued to Petitioner in December 2023 categorized him as a noncitizen "present in the United States who has not been admitted or paroled"—not as "an arriving alien." Dkt. No. 7-2 at 2. Although Respondents argue that Petitioner should have been treated as an "applicant for admission" upon his entry and initial detention, Dkt. No. 5 at 4, nothing in the record prior to his arrest suggests that his release was pursuant to Section 1225(b). These facts demonstrate that his detention is governed by 8 U.S.C. § 1226, not 8 U.S.C. § 1225. *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) ("[W]here a petitioner has been 'treated by [the federal government] as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply." (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025))).

Petitioner argues that his re-detention without prior notice of revocation of his OREC violated his right to due process. Dkt. No. 1 at 2, 5; Dkt. No. 8 at 2–3. Because "the applicable

statutory process shapes [the petitioner's] procedural due-process rights," *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020), the Court addresses the process required here.

b. *Procedures Required under 8 U.S.C. § 1226(a) and Implementing Regulations*

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into

this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (B.I.A. 2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the BIA. 8 C.F.R. § 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

2. <u>Due Process Requirements</u>

Petitioner argues that "once an individual has been released into the community and permitted to develop ties, obtain employment authorization, and comply with legal obligations, that individual retains a protected liberty interest under the Due Process Clause," such that the "Government cannot unilaterally re-detain the individual without an individualized evaluation and

a showing, under an elevated evidentiary standard, of changed circumstances demonstrating that the noncitizen poses a danger to society or a flight risk." Dkt. No. 1 at 5. He claims that his "arbitrary re-detention without a warrant, without prior notice, and without an individualized finding of necessity" violated his right to due process. *Id.* Respondents contend that Petitioner's re-detention comported with due process because his liberty interest is limited and conditional, his re-detention was "based on objective facts" of his purported reporting violation, and the government's interest in enforcing immigration laws is substantial. Dkt. No. 5 at 5–7.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

a. *Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[]

an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Here, after briefly detaining Petitioner in December 2023, DHS released him on his own recognizance. Until he was re-detained in October 2026, Petitioner spent nearly all of his time in the United States released on the OREC. Dkt. No. 1 at 4. He obtained an Employment Authorization Document, worked as an independent transportation contractor, paid federal income taxes, and established "deep family and community ties, serving as the emotional and financial provider for his household alongside his partner and her two minor children." *Id.* He has no criminal record. *Id.* He is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody.

b. *Procedural Protections*

To determine what procedures are constitutionally sufficient to protect a petitioner's liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Petitioner has an interest in remaining out of immigration detention. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Despite his liberty interest being "indeterminate" under an OREC, that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* Relatedly, Petitioner has an interest in the government adhering to its own procedures requiring (1) a revocation made by an appropriate official and (2) a bond hearing upon request. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); 8 C.F.R. § 236.1(c)(9). This factor favors Petitioner.

Turning to the second factor, Respondents purport to detain Petitioner under 8 U.S.C. § 1225(b), stripping him of his right to a bond hearing. *See* Dkt. No. 5 at 3–5. Indeed, Respondents do not argue that Petitioner received any process regarding the revocation of his OREC, claiming only that his detention was "based on objective facts" because he failed to report to ICE once, more than a year before his arrest. *Id.* at 6. Furthermore, Respondents have not shown that Petitioner's OREC was revoked by an appropriate official.[3] Dkt. No. 6 at 2. The risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due. *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at

[3] Respondents state that ICE "cancelled Petitioner's [OREC]," but provide no documentation supporting the claim or indicating which official was responsible for the cancellation. The relevant regulation provides that only the "district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign)" are authorized to revoke a noncitizen's OREC. 8 C.F.R. § 236.1(c)(9); *see also* 8 C.F.R. § 1236.1(c)(9) (listing district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign)"). Respondents do not address this regulatory requirement.

*5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where ICE "did not provide petitioner the process required by its own regulations"); *see also Abedi v. Carter*, No. 25-3179, 2026 WL 3149141, at *24 (10th Cir. Oct. 21, 2026) (where the government fails to "comply with a regulation protecting [Petitioner's] due process rights"—such as the regulations prescribing process due for revocation of a non-citizen's release—it "merits invalidation of the challenged agency action without regard to whether the alleged violation has substantially prejudiced him" (citation modified)).

The additional procedures afforded under Section 1226(a) would substantially mitigate the risk of erroneous deprivation of Petitioner's liberty, because those procedures allow detention only where the petitioner presents a flight risk or danger to the community. An adverse decision by an immigration judge in a bond hearing can further be appealed, and Petitioner could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [the petitioner] the opportunity to be heard by a neutral decisionmaker." *Rodriguez Diaz*, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of Section 1226(a) would render "the risk of erroneous deprivation . . . relatively small") (citation omitted). While Respondents claim that Petitioner was re-detained because he violated the terms of his OREC, Dkt. No. 5 at 6, that does not excuse the government's compliance with the applicable regulations. This factor weighs in favor of Petitioner.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that enforcing immigration laws, including "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, those interests are not impermissibly burdened by requiring the government to follow its own procedures regarding OREC revocations and bond hearings. Therefore, the Court finds that this factor too weighs in favor of Petitioner.

Under *Mathews*, the Court finds that the Respondents failed to provide Petitioner with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful. *See Truong v. Noem*, No. 25-CV-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.").[4]

## III. CONCLUSION

For the foregoing reasons, Olave Rondon's petition for a writ of habeas corpus, Dkt. No. 1, is GRANTED, and the Court orders as follows:

1. Respondents shall release Olave Rondon from custody within 24 hours on the terms of his most recent OREC or other terms consistent with Section 1226(a) and shall return to Olave Rondon any personal property not required to be retained by Respondents by law; and
2. Respondents shall file a Status Report by November 6, 2026, confirming that Olave Rondon has been released.

Dated this 4th day of November, 2026.

Lauren King
United States District Judge

[4] Because the Court reaches this conclusion, it need not address Petitioner's additional argument that his arrest violated his Fourth Amendment rights. Dkt. No. 1 at 2.